821 F.2d 649
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Milford MULLINS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1757.
 United States Court of Appeals, Sixth Circuit.
 June 26, 1987.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Milford Mullins appeals from the district court's order affirming the determination of the Secretary of Health and Human Services (Secretary) with respect to Mullins' disability onset date. Mullins argues on appeal that the medical evidence establishes that he was disabled as of February 13, 1980, rather than February 5, 1982, and he asserts that the Secretary's findings with regard to his residual functional capacity and nonexertional impairment limitations are not supported by substantial evidence. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant Mullins has filed two separate applications for disability insurance benefits, each claiming the same disability onset date. His first application was filed on May 30, 1980, in which Mullins alleged disability as of February 13, 1980, due to hypertension, arthritis and a lower back injury. This application was denied initially and upon reconsideration, and after conducting a hearing upon claimant's request, an Administrative Law Judge (ALJ) found claimant to be not disabled on September 30, 1981.[1] This decision was affirmed by the Appeals Council on December 3, 1981, making the ALJ's determination the final decision of the Secretary. He sought judicial review of that decision in the United States District Court for the Eastern District of Michigan, and on January 31, 1983, the district court adopted the magistrate's recommendation to uphold the decision of the Secretary as being supported by substantial evidence.
 
 
 3
 Mullins' second application for disability insurance benefits was filed on March 7, 1983, again alleging February 13, 1980, as his disability onset date. In addition to the impairments listed in his first application, Mullins claimed that he was disabled due to a heart and lung condition. Mullins was granted benefits because of his heart condition on May 10, 1983; however, the Social Security Administration (Administration) determined that the medical evidence supported a disability onset date of February 5, 1982, not February 13, 1980.
 
 
 4
 Thereafter, claimant sought reconsideration of his disability onset date, and once his request for reconsideration was denied, he filed a timely request for another hearing. At this second hearing, which was conducted before the same ALJ who presided at the first administrative hearing, Mullins was represented by counsel. Both Mullins and a vocational expert testified. After hearing the testimony and reviewing the medical evidence of record, the ALJ, on February 16, 1984, reaffirmed the February 5, 1982 disability onset date. The ALJ concluded that claimant suffered from severe cardiovascular problems and moderate obstruction airway disease, but that claimant's degree of impairment prior to February 5, 1982, was not medically determinable. The ALJ held that Mullins retained the functional capacity to perform a full range of light work even though he was unable to perform his past relevant work as a crane operator. Relying on these conclusions, as well as claimant's age and education, the ALJ found him not disabled.[2] The Appeals Council affirmed this decision, despite additional medical evidence submitted by Mullins.
 
 
 5
 Claimant then filed this claim in the United States District Court for the Eastern District of Michigan. While the magistrate recommended that the district court decline to reach the merits,[3] the district court rejected this recommendation. In reaching the merits, however, the court concluded that the Secretary's decision as to the disability onset date was supported by substantial evidence.
 
 
 6
 This timely appeal followed.
 
 II.
 
 7
 On review of the Secretary's decision to deny benefits or a period of disability, this court may set aside factual findings only if those findings are not supported by substantial evidence. See 42 U.S.C. Sec. 405. (g). "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of the evidence must be judged by viewing the record as a whole, Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Even if the reviewing court would have resolved the issues of fact differently, the Secretary's determination must stand if supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983) (per curiam).
 
 
 8
 A claimant has the ultimate burden of establishing an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A).[4] If an individual makes out a prima facie case of disability by establishing that he has a severe impairment and is unable to return to his past relevant work--as was done in the instant case--the burden shifts to the Secretary to prove that the individual is "able to perform substantial gainful activity in the national economy." Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).[5] In satisfying this burden, the Secretary must consider the individual's education, job experience, residual physical capacity and education. See 42 U.S.C Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). This burden can, on occasion, be satisfied by relying on the medical-vocational guidelines (the "grid") which were adopted by the Administration to aid in the determination of disability. See 20 C.F.R. pt. 404, subpt. P, app. 2; Campbell, 461 U.S. at 461. If a claimant's characteristics identically "correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform." Campbell, 461 U.S. at 462. However, if a claimant's characteristics "do not identically match the description in the grid," the grid can only be used as a guide; the Secretary must consider the claimant's individual limitations in making the ultimate determination. Kirk, 667 F.2d at 528; see also Campbell, 461 U.S. at 462 n. 5.
 
 
 9
 Mullins challenges the Secretary's determination on several grounds. First, Mullins asserts that his cardiovascular impairment, which is a listed impairment, see 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 4.04B7, existed as of February 13, 1980. Second, appellant argues that the ALJ's finding that he had the residual functional capacity to do a full range of light work is not supported by substantial evidence and is contrary to the ALJ's prior decision. Finally, appellant asserts that the ALJ erred in relying on the grid because he suffers from a severe nonexertional impairment related to his pulmonary condition.
 
 A.
 
 10
 Claimant's principal argument is that his cardiovascular impairment, which forms the basis of the Administration's finding of disability as of February 5, 1982, was in fact existent as of February 13, 1980. To support his argument, appellant relies on the letter of Dr. Irwin Schatz dated February 24, 1984. Dr. Schatz reviewed Mullins' ventriculograms and arteriograms (cardiac catheterization tests) which were performed on April 17, 1980, and August 11, 1982. The August 11, 1982 cardiac catheterization study was the medical evidence which established that claimant was disabled as of February 5, 1982, six months prior to the study.[6]
 
 
 11
 The April 17, 1980 cardiac catheterization was performed by Dr. Felix Rogers, who reported that the study revealed:
 
 
 12
 luminal irregularities and a small aneurysm at the juncture of the proximal third and middle third of the main vessel without significant stenosis. The left coronary artery revealed narrowing of the left anterior descending branch in the proximal without significant stenosis.
 
 
 13
 Dr. Roger's report does not support a finding that Mullins suffered from a cardiovascular impairment listed in Appendix 1 nor does Mullins so assert. See 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 4.04B7.[7] However, in his February 24, 1984 letter, Dr. Schatz opined that there was:
 
 
 14
 no significant difference between [the April 17, 1980 and the August 11, 1982] studies, and in my opinion they demonstrate the same degree of coronary artery obstructive disease. The first study is not seen as clearly as the second, and is done at a lower magnification; it is likely that differences in interpretation are based on these technical matters and not on any real changes in the coronary anatomy.
 
 
 15
 Claimant argues, therefore, that the April 17, 1980 catheterization results were incorrectly interpreted by Dr. Rogers and that Dr. Schatz's review of the two catheterization reports reveals that Mullins was in fact disabled from his cardiac condition as of February 1980. Essentially, claimant asserts that the August 1982 catheterization report establishes that the chest pains he was experiencing in February 1980 were cardiac in origin.
 
 
 16
 Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings. Further, there is ample support in the record in addition to Dr. Rogers' medical opinion to uphold the ALJ's findings with respect to the severity of Mullins' cardiac condition. This includes EKG's, x-rays, physical examination evidence and claimant's testimony describing his symptoms of chest pain.[8] We agree with the Secretary that this evidence as well as Dr. Rogers' report supports the ALJ's conclusion that claimant's impairments or combination of impairments prior to February 5, 1982, did not qualify as a listed impairment.
 
 B.
 
 17
 Claimant asserts next that the ALJ's conclusion that he was capable of performing a full range of light work cannot be upheld because the finding is inconsistent with the ALJ's finding in the first administrative proceeding. Specifically, Mullins points out that after the first hearing, the ALJ found that he was only capable of performing sedentary work; and, now that it is established that he also suffers from a cardiovascular impairment, it is not logical to conclude that he could do a full range of light work. Further, claimant asserts that assuming he was only capable of performing sedentary work, he would be found disabled since his skills are not transferable. See 20 C.F.R. pt. 404, subpt. P, app. 2, Table 1, Rule 201.10.
 
 
 18
 First, we believe the ALJ's light work finding is supported by substantial evidence. Even assuming that claimant only retained the residual functional capacity to perform sedentary work, however, we must still reject claimant's argument. After the first hearing, the ALJ concluded that claimant's skills were transferable to sedentary jobs, and that determination was upheld by the district court. We cannot bind the ALJ to his prior residual functional capacity finding without also adopting his transferability of skills finding. The ALJ's prior conclusion as to transferability of job skills is clearly supported by substantial evidence in the record, particularly the vocational experts' testimony. Whether the ALJ found claimant capable of performing sedentary work or light work, therefore, claimant would still be found not disabled considering his age, education and work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2, Table 1, Rule 201.11, and Table 2, Rules 202.11, 202.12.
 
 C.
 
 19
 Finally, claimant asserts that the ALJ erred in relying on the grid because he has a severe nonexertional impairment. In particular, claimant asserts that his pulmonary condition prevents him from working in an environment unless it is pollutant free.
 
 
 20
 It is well established that if a claimant's condition constitutes a nonexertional impairment, an ALJ may not rely on the grid in determining whether there are jobs in the national economy which the claimant can perform. Kirk, 667 F.2d at 528. However, "before reaching the conclusion that the grid will not be applied because [of the alleged] nonexertional limitations, those limitations must be severe enough to restrict a full range of gainful employment at the designated level." Id. at 537 (emphasis added). See also Kimbrough v. Secretary of Health & Human Services, 801 F.2d 794, 796 (6th Cir.1986) (per curiam). In the instant case, the medical evidence of records does not support claimant's assertion that he suffered from a severe nonexertional impairment prior to February 5, 1982. None of claimant's treating physicians placed environment restrictions on him, such as an inability to work around fumes or dust. The ALJ was further persuaded in reaching his conclusion because claimant was a heavy smoker, noting that it was difficult to envision a severe environment restriction imposed by a pulmonary condition when the claimant was a heavy smoker. As in Kirk, the claimant's "quarrel" is not with the ALJ's reliance on the grid, but with the ALJ's conclusion that his pulmonary condition does not constitute a significant nonexertional impairment restricting a full range of light work. We conclude that there is substantial evidence in the record to support the ALJ's finding of no severe nonexertional impairment, and find that his reliance on the grid was appropriate.[9]
 
 
 21
 Accordingly, we AFFIRM the judgment of the district court upholding the Secretary's determination as to claimant's disability onset date.
 
 
 
 [1]
 Specifically, the ALJ found that although claimant suffered from hypertension and lumbar spine pain, he retained the residual functional capacity to do sedentary work. Further, since claimant was an individual approaching advanced age with a limited education and transferable skills, the ALJ found him not disabled pursuant to the medical-vocational guidelines. See 20 C.F.R. pt. 404, subpt. P, app. 2, Table 1, Rule 201.11
 
 
 [2]
 See 20 C.F.R. pt. 404, subpt. P, app. 2, Table 2, Rules 202.11, 202.12. The ALJ noted that claimant had a limited education and was of closely approaching advanced age. He found it unnecessary to determine whether claimant's skills were transferable
 
 
 [3]
 The magistrate reasoned that claimant was seeking a review of the Secretary's decision to not reopen the prior disability determination, and therefore concluded that the district court lacked jurisdiction to review the denial to reopen
 
 
 [4]
 Section 423(d)(1)(A) defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...."
 
 
 [5]
 In Kirk, this court recognized that there is five-step analysis in establishing disability. If a claimant is presently working, he or she is automatically not qualified for benefits. In the instant case, the ALJ found that Mullins had not been gainfully employed since February 13, 1980, the same date as he claims for his disability onset date. If a claimant is found to not have an impairment which significantly limits his ability to work, then he is not disabled. Since the ALJ found that Mullins had a severe impairment, further inquiry was required. If a claimant is not working and has a severe impairment, it then must be determined whether the impairment is listed in, or whether the combination of impairments is the equivalent of an impairment listed in, 20 C.F.R. pt. 404, subpt. P, app. 1; if so, benefits are owing without further inquiry. See also 20 C.F.R. Sec. 404.1525(a). In the instant case, the ALJ found that Mullins' impairments did not equal a listed impairment, although Mullins challenges that determination. Next, it must be determined whether the individual can return to his or her past relevant work. If the individual establishes "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant has satisfied his burden of going forward and establishes a prima facie case of disability. Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978). As was noted above, the ALJ concluded that claimant had satisfied this burden of going forward. Finally, the Secretary must prove that the claimant is "able to perform substantial gainful activity in the national economy," Kirk, 667 F.2d at 528, taking into account the claimant's education, past work experience, residual functional capacity and age. Necessary to this final determination, obviously, is a finding regarding the claimant's residual functional capacity. In this case, the ALJ found that Mullins could perform a full range of light work, a finding which Mullins challenges on appeal
 
 
 [6]
 This study revealed significant stenosis--60 to 70% proximal obstruction of the right coronary artery and a 70% obstruction immediately after that area. There was a less severe obstruction, about 50 to 60%, of the second diagonal branch of the left anterior descending
 
 
 [7]
 Section 4.04B7 provides that ischemic heart disease with chest pain of cardiac origin can be established with angiographic evidence, including ventriculograms and arteriograms, which shows:
 a. 50 percent or more narrowing of the left main coronary artery; or
 b. 70 percent or more narrowing of a proximal coronary artery (see 4.00H3) (excluding the left main coronary artery); or
 c. 50 percent or more narrowing involving a long (greater than 1 cm.) segment of a proximal coronary artery or multiple proximal coronary arteries....
 
 
 [8]
 Chest pain of cardiac origin is described in Sec. 4.00E, 20 C.F.R. pt. 404, subpt. P, app. 1, which provides in part:
 The character of the pain is classically described as crushing squeezing, burning, or oppressive pain located in the chest. Excluded is sharp, sticking or rhythmic pain.
 Further, this section warns against chest pains which "may masquerade as angina," for instance,
 gastrointestinal tract lesions such as biliary tract disease, esophagitis, then hiatal hernia, peptic ulcer, and pancreatitis; and musculoskeletal lesions such as costochondritis and cervical arthritis.
 At claimant's first hearing, he described his pain as "pressure-like discomfort," which was relieved with "eructation [belching] or Alka-Seltzer," supporting a conclusion of chest pain which was noncardiac in origin. Further, at the second hearing, claimant described both "pressure-type pain" and sharp pain "like a knife," which occurred more often than the pressure-type pain. Accordingly, although some of his pain may have been cardiac in origin, certainly his testimony does not support a conclusion that his impairment prior to February 5, 1982, amounted to a listed impairment.
 
 
 [9]
 Having concluded that the ALJ properly relied on the grid, we do not address claimant's argument that the ALJ posed an incomplete hypothetical question to the vocational expert