852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eva L. THORN, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 87-6081.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1988.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Eva L. Thorn appeals from the judgment of the district court denying her claim for disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Claimant filed her first application for disability insurance benefits on January 15, 1985. Initially, she stated that the onset date of her disability was November 1, 1981. After learning that her insured status expired on March 31, 1981, she amended her application to allege a November 1, 1980, onset date.[1] The basis for the claim of disability is a psychological impairment in the form of severe depression.
 
 
 3
 Claimant reports having seen a psychiatrist for the first time at the age of sixteen. On August 5, 1974, claimant reported to the Marshall County, Kentucky, Comprehensive Care Center complaining of depression and anxiety. She was interviewed by Dr. Bailey Binford, a psychiatrist, who noted that there was no evidence of paranoid ideations or feelings of persecution. Claimant's thoughts were well organized, and there was no indication of suicidal ideations. Her memory appeared reasonably intact, and her judgment did not seem grossly impaired. Claimant stated that she believed that she was going to have a nervous breakdown; however, Dr. Binford noted no evidence that claimant had been out of touch with reality.
 
 
 4
 Dr. Binford recommended an antidepressant-tranquilizer combination and noted that only by following the patient could an appropriate diagnosis be made. He stated that manic-depressive illness (depressive type), schizophrenia, and schizo-affective depressed type diagnoses were possible. He also noted that it was possible that claimant's condition merely represented a severe anxiety neurosis with a need for constant attention. J.A. at 206-07.
 
 
 5
 The record reveals that claimant began taking Valium in 1975. The prescription was given by Dr. Friedman, her treating physician. J.A. at 128.
 
 
 6
 On October 28, 1977, claimant was again seen at the Comprehensive Care Center. The record indicates that claimant was hospitalized in July 1977, when she was admitted to Lourdes Hospital for dizziness. During her hospitalization, she reported "feeling depressed on and off for several years."
 
 
 7
 During the October 28, 1977, examination, claimant appeared to be "moderately depressed," and she complained of weakness and dizziness. Her speech was coherent, and there was no evidence of delusions, hallucinations, or paranoia. She denied possessing suicidal ideations. Her pattern of thinking indicated that she did suffer depression. She was treated with individual psychotherapy and chemotherapy. J.A. at 212-13. Additional examinations on December 30, 1977, and January 22, 1979, confirmed the diagnosis of depression.
 
 
 8
 On February 26, 1979, claimant was again evaluated by Dr. Binford. His notations revealed that claimant stated "she had been doing, she felt, quite a bit better other than a few momentary feelings of depression." However, Dr. Binford also noted that claimant had recently been suffering increased nervousness and dizziness. She was unable to sleep and appeared tense. In view of these complaints, her medication was adjusted. J.A. at 157.
 
 
 9
 Claimant was hospitalized in August 1981 for back pain. Dr. Robert Merriweather, her treating neurosurgeon, stated that "Mrs. Thorn returns having improved significantly as regards her mental status and overall condition is concerned. She has resumed her normal activities, has not gained weight however, and I have encouraged her to pursue this." J.A. at 179.
 
 
 10
 However, only two months later, on November 1, 1981, claimant was admitted to Barnes Hospital in St. Louis, Missouri. Dr. Paul Packman diagnosed her condition as severe depression characterized by crying, tearfulness, inertia, interval and terminal insomnia, shakiness, a pressure sensation in her head, decreased pep and energy, anorexia with a thirteen-pound weight loss, increased irritability, increased forgetfulness, decreased concentration, feelings of weakness, anxiousness, decreased interest, not caring for things, and feelings of hopelessness, worthlessness, and guilt. At the time of admission, claimant possessed suicidal ideations. Her weight had dropped to approximately eighty pounds.
 
 
 11
 Claimant remained at the Barnes Hospital from November 4 to December 5, 1981. During her stay, she received ten bilateral electroconvulsive therapy treatments. Some improvement was noted. However, claimant was hospitalized again from February 18 to March 5, 1983. She has been followed on an out-patient basis ever since. Dr. Packman noted that claimant has been treated for depression since 1974 and that a gradual decrease in her function had resulted in the 1981 hospitalization.
 
 
 12
 Claimant's application was denied initially and upon reconsideration. At a hearing before the Administrative Law Judge conducted on July 18, 1985, claimant testified that she was four feet, eleven and one-half inches tall and weighed ninety-eight pounds. She could read and write and had past relevant work experience as a rivet machine operator, cook, and waitress. She was last employed from August until November, 1980, as a cook and waitress. She testified that she quit her job in 1980 because she just "couldn't face" the work environment any longer. Claimant's responses to the remaining questions indicated that she has a very poor memory and was able to relate the course of her medical treatment only with constant leading from her attorney. She indicated that she has little interest in doing anything or seeing anyone.
 
 
 13
 Claimant's daughter, Lauren Travis, gave extensive testimony regarding claimant's condition. Mrs. Travis stated that claimant failed to take an active interest in her grandchild, was moody, and had stopped her pattern of immaculate housekeeping. She stated that her mother has occasional tantrums during which she runs through the house and throws things.
 
 
 14
 In a decision rendered on March 21, 1986, the ALJ concluded that although claimant is currently suffering from a severe emotional impairment, there was insufficient evidence to support the claim that she suffered a disabling mental impairment prior to March 31, 1981, when her insured status expired. Accordingly, the ALJ concluded that at the time claimant's disability insured status expired, she was capable of performing her past relevant work as a cook and waitress.
 
 
 15
 On May 27, 1986, Dr. Packman submitted a letter in which he indicated that he had had an opportunity to review claimant's medical records from 1974 until 1979. He concluded that her impairment was longstanding and that her disability had been present for over one year prior to her November 1981 hospitalization.
 
 
 16
 The Appeals Council, when considering claimant's request for review, examined the evidence of record as well as the additional letter submitted by Dr. Packman. Although recognizing that Dr. Packman expressed an opinion that claimant was disabled since November 1980, the Appeals Council noted that no medical evidence in the record supported this contention. Accordingly, the Appeals Council found no basis for overturning the decision of the ALJ.
 
 
 17
 Claimant subsequently sought review in the district court. The case was referred to a Magistrate, who concluded that the decision of the Secretary was supported by substantial evidence. The Magistrate's Report and Recommendation was adopted by the district court. In this appeal, claimant argues that the decision of the Secretary that she was not disabled prior to the expiration of her insured status is not supported by substantial evidence.
 
 II.
 
 18
 The only issue presented for consideration by this court is whether substantial evidence supports the Secretary's conclusion that claimant was not disabled prior to the expiration of her insured status on March 31, 1981. Pursuant to 42 U.S.C. Sec. 405(g), judicial review of the Secretary's decision is limited to determining whether there is substantial evidence in the record as a whole to support the decision. The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 19
 The claimant possesses the initial burden of establishing the onset of a disabling impairment prior to the expiration of her insured status. Hardaway v. Secretary of Health & Human Services, 823 F.2d 922, 926 (6th Cir.1987) (per curiam); 42 U.S.C. Sec. 423(d). The onset date for disability of nontraumatic origin should be determined by considering the applicant's allegations, work history, and the medical evidence of record. Lichter v. Bowen, 814 F.2d 430, 434 (7th Cir.1987).
 
 
 20
 The onset date alleged by the claimant " 'should be used if it is consistent with all the evidence available.' " Id. (quoting SSR 83-20 at 111 (1983)). However, in reviewing the Secretary's determination of the appropriate onset date, " 'the question we face is whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported.' " Villa v. Heckler, 797 F.2d 794, 797 (9th Cir.1986) (quoting Swanson v. Secretary of Health & Human Services, 763 F.2d 1061, 1065 (9th Cir.1985)); see also Mullins v. Secretary of Health & Human Services, 836 F.2d 980 (6th Cir.1987) (per curiam) (disagreement regarding weight to be accorded various medical opinions on issue of onset date is insufficient basis for overturning decision of Secretary).
 
 
 21
 We conclude that the medical evidence of record supports the Secretary's determination that claimant was not disabled before March 31, 1981. When claimant sought treatment at the Comprehensive Care Center on October 28, 1977, her depression was described as "moderate." J.A. at 155. At that time, she possessed no suicidal ideations. On February 26, 1979, claimant reported that she had been doing better and had only momentary feelings of depression.
 
 
 22
 When claimant was hospitalized in August 1981, her treating neurosurgeon noted that claimant's mental condition had significantly improved. The Secretary's consultative physician, after examining her medical records, concluded that claimant had not established disability prior to the expiration of her insured status.[2]
 
 
 23
 The medical evidence summarized above substantially supports the decision of the Secretary. Although the observation that claimant's medical condition had significantly improved was made by her treating neurosurgeon and not a psychiatrist, this treating physician had had the opportunity to see claimant over a period of two months. Moreover, his impressions are consistent with those noted by the psychiatrist at the Comprehensive Care Center, who described claimant's depression as "moderate" and who also indicated that she was undergoing some improvement. In short, the Secretary's determination is supported by more than a "mere scintilla" of evidence and thus must be upheld.
 
 III.
 
 24
 After careful consideration of the briefs, record, and arguments presented by the parties, we conclude that the decision of the Secretary that claimant was not disabled prior to the expiration of her insured status is supported by substantial evidence. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Claimant stated that she took this action on the advice of an employee of the Social Security Administration who told her to list her onset date as one year prior to her November 1981 hospitalization
 
 
 [2]
 The Secretary places much emphasis upon the fact that claimant returned to work for four months in 1980 as a waitress in a restaurant owned by a family friend. We hesitate to place enormous reliance upon this fact, as this court has recognized that a brief period of employment does not necessarily constitute substantial evidence that a claimant is able to perform work in a competitive environment on a regular basis. Parish v. Califano, 642 F.2d 188, 192-93 (6th Cir.1981). However, given the other evidence of record to support the conclusion that claimant's impairment was not disabling prior to the expiration of her insured status, this factor need not be given controlling significance