**Roger L. COPES, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 1:95CV175 TIA.**

United States District Court, E.D. Missouri, Eastern Division.

Oct. 7, 1997.

Frederick S. Spencer, Mountain Home, AR, for Plaintiff.

Eric T. Tolan, Asst. U.S. Atty., Office of U.S. Atty., St. Louis, MO, for Defendant.

## MEMORANDUM AND ORDER

ADELMAN, United States Magistrate Judge.

This is an action under Title 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. Both parties seek summary judgment. The undersigned has jurisdiction over this cause pursuant to 28 U.S.C. § 636(c).

### Procedural History

Plaintiff filed his applications for benefits on April 22, 1994 (Tr. 61–63, 104–109). Plaintiff's applications were denied initially (Tr. 56–60, 90–102) and upon reconsideration (Tr. 52–55, 66–78). After a hearing (Tr. 22–51), an Administrative Law Judge determined that plaintiff was not disabled (Tr. 7–16). The Appeals Council denied plaintiff's request for review (Tr. 2–3) Thus, the ALJ's decision stands as the final determination of the Commissioner.

### Evidence Before the ALJ

Plaintiff's hearing before the ALJ took place on December 12, 1994. Plaintiff was 40 years old at the time of the hearing. He was 6'1" tall and weighed 154 pounds. He lived with his wife and one child in Poplar Bluff, approximately 80 miles away from the court. He had driven himself to the hearing (Tr. 26–27).

Plaintiff testified that he had completed the twelfth grade. Plaintiff worked with explosives in a quarry as a potter man for Lone Star Cement Co. from March 1973 to November 1990. From January 1991 to January 1992, plaintiff worked for Hampton Trucking Co. He had also serviced heavy-duty equipment for a construction company. At each of these jobs he lifted between 50 and 100 pounds and operated heavy equipment. He had learned the skills for all of these positions on the job (Tr. 27–28).

Plaintiff left his last job because his back went out and he could not manage the weight anymore. He did not believe he could walk more than a quarter of a mile. He could stand for three or four hours at a time as long as he could switch positions. He could probably bend forward and touch his knees, but he was not sure he would be able to stand up again (Tr. 29–30).

Plaintiff had difficulty "hanging on to things" with his hands. He could not lift more than 20 pounds at a time. He could sit for 30 to 60 minutes, if he changed positions. He did not have difficulty pushing or pulling, but he had some trouble getting in and out of a car. He could hold his hand above his head for 10 or 15 minutes (Tr. 30–31).

Plaintiff enjoyed collecting old cars and working on them, but he could no longer get underneath the cars. He did not spend much time on his hobby anymore due to the weather and his health (Tr. 32).

Plaintiff usually arose at 8:00 a.m. and went to bed around 10:00 p.m. His appetite was normal. He was able to take care of all of his personal needs. When he felt well, he brought wood into the house for the fire. He often went over to check on his disabled mother and grandmother. On an average day, plaintiff watched a little television and helped his wife around the house. His wife did not work; their only source of income was A.D.C. (Tr. 33–34).

Plaintiff had injured his back when he jumped off of a truck in 1986. He also had a lung problem due to smoking two and a half packs of cigarettes a day. He had poor vision in his right eye, but it was correctable with eyeglasses. Plaintiff's main problem was the pain in his back and shoulders (Tr. 34–35).

Plaintiff went to the Park Clinic for physical therapy. He had been under the care of Dr. Towry for about a year. Dr. Towry was supervising his blood pressure and blood sugar. Plaintiff was borderline diabetic, but he was not on medication. Plaintiff was not following a diabetic diet, which caused his blood sugar to be a little high (Tr. 35–36).

Plaintiff took Naprosyn for pain and inflammation, another medication for muscle spasms, and a medication for blood pressure. He was down to one pack of cigarettes a day. He did not have a brace on at the hearing, but he occasionally wore one. Plaintiff was participating in traction/exercise therapy. He went to physical therapy three times a week, but he had never visited a pain clinic (Tr. 36–38). At physical therapy, he used heat, ice, sonogram, stretching and exercising (Tr. 41). The therapy gave him temporary relief (Tr. 38).

Plaintiff had suffered sharp, stabbing pains in his lower back on and off for a year. Lately the pain bothered him almost all the time. The pain radiated down his right leg and into his knee. Sometimes the pain was unbearable. Lifting or cutting wood with a chain saw aggravated the pain. Plaintiff experienced some relief from pain medication, but it made him drowsy. When he was in pain, plaintiff stayed off of his feet. He laid down for at least two or three hours a day if the pain was bad (Tr. 38–39).

Plaintiff experienced pain most of the time, but when his back completely went out, he could not function. This had happened two or three times. Once, he was trying to lift something, but another time his back went out just from bending over. He rarely cut wood anymore because the bending aggravated his pain; nor could he load and unload wood the way he used to do (Tr. 40–41).

When asked whether he could work in a situation where he was allowed to switch positions throughout a ten hour workday, plaintiff testified that he might be able to do it, depending on what the work involved. Switching positions was basically what he did now to relieve his pain. Plaintiff could not do any heavy lifting, bending, or going under machines (Tr. 41–44).

Dr. Arthur Smith, a Vocational Expert, testified that, assuming that all of plaintiff's allegations were true, he could not return to his past relevant work, or any work. However, if plaintiff's pain was mild or moderate and he retained the capacity to lift ten pounds frequently and 20 pounds occasionally, there were jobs plaintiff could perform in the range of, light work. Examples of such jobs included skilled and unskilled jobs in various industries, inspecting jobs, stamper, usher, and ticket-taker. Dr. Smith estimated that there were 30,000 to 35,000 such jobs in Missouri (Tr. 44–49).

If plaintiff needed a sit-stand option the number of jobs available to him would be 5,000 in Missouri, and 250,000 nationally. However, if plaintiff needed to walk around a bit to relieve his pain, none of the jobs listed by the VE would be appropriate (Tr. 49–50).

*Medical Records*

A CT scan of plaintiff's lower lumbar region on February 21, 1994 revealed thickening at the third lumbar interspace and a bulge on the right fourth lumbar interspace. In addition, there was asymmetry of the facet structure throughout the lower lumbar

region with evidence of a defect in the part articularis at this level (Tr. 135).

Clifton O'Meara, M.D. examined plaintiff on March 7, 1994. Plaintiff complained of low back pain in the lumbosacral junction, the thoracic spine, and in the shoulder area. The pain had been present for several years and related to a 1986 injury. Dr. O'Meara found that plaintiff had scoliosis of the thoracic spine. He was tender to percussion in the lumbosacral spine. X-rays showed spondylolysis of the L–5 vertebra bilaterally without spondylolisthesis. An old CT scan revealed some degenerative disc disease with a mild disc protrusion. Dr. O'Meara diagnosed mechanical back pain secondary to spondylolysis and degenerative disc disease. He recommended physical therapy, but plaintiff declined (Tr. 149).

Dr. Haas reported on May 10, 1994 that plaintiff had a long history of low back pain, which had been controlled as long as plaintiff did no heavy lifting. The pain was now radiating in his shoulders and arms. Dr. Haas also noted that plaintiff had mildly decreased breath sounds. Dr. Haas did not believe that plaintiff would be able to work until November 10, 1994 because any lifting irritated his back pain. Dr. Haas believed that plaintiff was disabled because his training was limited to jobs which required lifting, twisting and bending (Tr. 146–47).

A chest x-ray taken on June 22, 1994 showed that plaintiff's cardiac silhouette was hyper inflated but without coalescent infiltrates or gross failure (Tr. 165).

Chul Kim, M.D., examined plaintiff for back pain and lung problems on June 28, 1994. Plaintiff reported injuring his back in 1986 when he jumped off of a truck. Since then he had experienced a persistent dull pain in his low back which turned into sharp, radiating pain if he tried to lift more than 40 pounds. Plaintiff stated that he had to lie down for two to three hours a day to relieve his pain. Plaintiff also reported breathing problems resulting from smoking two to two and a half packs of cigarettes a day for the last 25 years. The breathing problems had been present for 15 years. Plaintiff said he became short of breath if he walked one half mile, climbed stairs, or was in high humidity (Tr. 139).

Dr. Kim's examination revealed that plaintiff had somewhat decreased breathing sounds with scattered rhonchi. There was no significant swelling, deformity, heat or limitation of the range of motion in any major joint, although he complained of pain in his lumbar spine and right wrist with range of motion activity. There was some tenderness in his lower lumbar spine but there was no muscle spasm. Plaintiff's gait was stable and he could bear full weight on both legs, walk on heels and toes, and squat fully without significant problem. Hand grip and fine finger movement were also normal. Neurological examination was nonspecific. Plaintiff scored 29 out of 30 on a mini-mental status exam (Tr. 140–141).

Steven R. Turner, M.D. evaluated plaintiff on August 10, 1994 for his ten-year history of dizziness. Plaintiff's EKG was normal. A chest x-ray revealed that plaintiff's heart size was normal. Although his lungs were hyper inflated, his lung fields were clear and the pulmonary vasculature was normal. Dr. Turner diagnosed orthostatic hypotensive dizzy episodes. He referred plaintiff back to his family doctor and indicated that plaintiff did not need to return to the Heart Clinic (Tr. 156).

James Towry, D.O. performed a Social Services evaluation of plaintiff on November 2, 1994. Dr. Towry indicated that plaintiff was disabled for six to twelve months because he had difficulty with work involving lifting, stooping, standing, squatting or twisting. Dr. Towry recommended an orthopedic evaluation for plaintiff's low back pain (Tr. 164).

On December 15, 1994, plaintiff returned to Dr. Towry requesting pain medication. Plaintiff reported that his back had "gone out" while he was lifting wood. Dr. Towry noted that straight leg raising was negative bilaterally. Although plaintiff's back was tender, there was no deformity, swelling or edema (Tr. 162). On December 27, 1994, plaintiff requested physical therapy, which Dr. Towry arranged. Dr. Towry renewed plaintiff's prescription for physical therapy on January 27, 1995 (Tr. 161).

*Administrative Law Judge's Determination*

The ALJ found that plaintiff met the insured status requirements of the Social Security Act on February 7, 1994, the date he claimed that he became unable to work, and continued to meet them through December 1998. Plaintiff had not engaged in substantial gainful activity since February 7, 1994 (Tr. 14).

The ALJ determined that although plaintiff suffered from back and shoulder pain secondary to scoliosis, spondylolysis and degenerative disc disease, breathing problems with heavy exertion, and hypotensive dizzy spells, he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. He found that plaintiff's subjective complaints and descriptions of his limitations were not fully credible (Tr. 15).

The ALJ found that plaintiff had the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting more than twenty pounds and constant standing or sitting. Plaintiff could not perform his past relevant work. Furthermore, his residual functional capacity to perform the full range of light work was reduced by his inability to sit or stand constantly throughout an eight-hour work day (Tr. 15).

The ALJ noted that plaintiff was 41 years old, which was defined as a younger individual. Plaintiff had a high school education, but no acquired work skills which were transferable to the skilled or semi-skilled work functions of other work consistent with his limitations. In view of plaintiff's exertional capacity for light work and his age, education, and work experience, the Medical–Vocational guidelines directed a conclusion of not disabled. Although plaintiff's impairments did not allow him to perform the full range of light work, using the guidelines as a framework for decisionmaking, there were a significant number of jobs in the national economy which plaintiff could perform. The Vocational Expert had testified that there were 5,000 such jobs in the state of Missouri and fifty times that many in the national economy. Therefore, plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the ALJ's decision (Tr. 15–16).

*Legal Standards*

A claimant for social security disability benefits must demonstrate that he suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. 416.905(a).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520(b)-(f) (1993). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a medically severe impairment which precludes engaging in substantial gainful activity; or (3) he has an impairment which meets or is equal to one of the impairments listed in 20 C.F.R., Subpart P, Appendix; (4) he is unable to return to his past relevant work; and (5) he is unable to engage in other positions which exist in significant numbers in the national economy.

The court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence *is* less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" *Cruze v. Chater,* 85 F.3d 1320, 1323 (8th Cir.1996) (quoting *Oberst v. Shalala,* 2 F.3d 249, 250 (8th Cir.1993)). The court does not reweigh the evidence or review the record de novo. *Id.* (citation omitted). Instead, even if it is possible to draw two inconsistent conclusions from the evidence, the court must affirm the Commissioner's decision if it is supported by substantial evidence. *Id.; Clark v. Chater,* 75 F.3d 414, 416–417 (8th Cir.1996).

■ To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the

ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and nonexertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). *Stewart v. Secretary of Health and Human Servs.*, 957 F.2d 581, 585–586 (8th Cir.1992); *Brand v. Secretary of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir.1980).

■ The ALJ may discount subjective complaints of pain if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir.1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. *Id.; Ricketts v. Secretary of Health & Human Servs.*, 902 F.2d 661, 664 (8th Cir.1990).

■ When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints of pain under the *Polaski* standards, and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987).

■ Pain alone may be disabling within the meaning of the Social Security Act if it is supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to cause pain. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (listing factors to consider when evaluation subjective complaints of pains [1]). However, if inconsistencies in the record and a lack of supporting objective medical evidence support the ALJ's decision, the court will not reverse the deci-

sion simply because some evidence may support the opposite conclusion. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir.1995).

### Discussion

■ Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. Specifically, he argues that the ALJ placed undue weight on the medical evidence and inappropriately discounted plaintiff's subjective complaints. The undersigned disagrees. Plaintiff's major complaint is back pain. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991). The medical evidence supports plaintiff's contention that he suffers low back pain. However, none of the doctors who examined plaintiff described limitations that would prevent him from performing a light duty job where he could alternate between sitting and standing. Dr. Haas did opine that plaintiff was disabled because his job training was limited to occupations requiring lifting, bending or twisting, but Dr. Haas was not qualified to render a vocational opinion. The Vocational Expert testified that, if plaintiff experienced mild or moderate pain and could lift ten pounds frequently and twenty pounds occasionally, but needed to alternate between sitting and standing, there were a significant number of jobs in the national economy plaintiff could perform.

Plaintiff's own testimony of his daily activities supports the hypothetical presented to the Vocational Expert by the ALJ. Plaintiff stated that he occasionally chopped and carried wood, drove his car frequently, helped with housework, checked in on his disabled relatives, and "tinkered" with cars. Furthermore, he stated that he might be able to perform a ten-hour a day job where he was allowed to switch positions, depending on the type of work. Such testimony provides substantial evidence for a finding that plaintiff was not disabled. *Loving v. Dept. of HHS*, 16 F.3d 967, 970–71 (8th Cir.1994); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

---

1. The *Polaski* factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimant's functional restrictions. *Polaski,* 739 F.2d at 1322.

Plaintiff also alleged shortness of breath as a disabling condition, but he stated during the hearing that the back pain was his main problem. Furthermore, plaintiff's failure to stop smoking undermines his claim for disability. *Mullins v. Secretary of HHS*, 836 F.2d 980 (6th Cir.1987).

In addition, plaintiff's allegedly disabling conditions are long-standing; he continued to work with these conditions for many years. There is nothing in the record to indicate that plaintiff's condition has significantly deteriorated in recent years. *See Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir.1992).

Finally, plaintiff makes several references to the ALJ's failure to consider his mental impairment, but he did not raise the issue of mental impairment at any time during the administrative review of his claim. Furthermore, he fails to specify his mental impairment.[2]

In sum, there is substantial evidence to support the ALJ's opinion that plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment is **GRANTED.**

---

**2.** It appears that plaintiff's attorney used a "canned brief," raising myriad issues, many of which had little or no relevance to the case. The brief contains a near verbatim recitation of the ALJ's opinion and plaintiff's testimony, neither of which is helpful to the court. The "statement of the law" section of plaintiff's brief consists mainly of string cites followed by scant or no application of the law to the facts of plaintiff's case. Overall, the brief leaves the court with the impression that plaintiff's attorney devoted very little thought or effort to drafting it.

It is important to note, however, that the quality of plaintiff's brief did not affect the court's determination; the undersigned thoroughly reviewed the record to determine that the ALJ's opinion was supported by substantial evidence.

