NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0081n.06
Filed: November 10, 2004

No. 03-6363

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHERRI FORD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER of SOCIAL SECURITY, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE and SUTTON, Circuit Judges, and ADAMS, District Judge.[*]

**ADAMS, J.** Sherri Ford appeals the district court judgment affirming the Commissioner of Social Security's denial of disability benefits. We conclude that substantial evidence supports the Commissioner's decision and affirm.

## I. STATEMENT OF FACTS

Ford was born on August 17, 1966. She completed the twelfth grade and one year of college. She has worked as a truck line operations supervisor, truck dispatcher, customer service representative, lumber salesperson, and waitress.

Ford contends that she is disabled and unable to work due to degenerative disc disease caused by a May 1, 1998 workplace injury to her back. Subsequent to her injury, Ford attended four

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

physical therapy sessions and in June 1998 returned to work as a truck line operations supervisor. She worked for two to three days before quitting due to back pain. Later that month she sought treatment from Dr. Monte Rommelman for continued pain. He diagnosed a herniated disc and recommended continued physical therapy with aquatic exercises.

In December 1998, Ford underwent surgery. Dr. R. Peter Mirkin performed a microdissection, hemilaminectomy, and discectomy. On January 11, 1999, Dr. Mirkin noted that while Ford suffered from pain and decreased range of motion, she had a functional active range of motion in the lower extremities, could heel walk and toe walk symmetrically, and exhibited 3+/5 grade strength bilaterally with no obvious focal muscle weakness. He released Ford to return to work in January 1999. In February 1999, Dr. Mirkin advised Ford to avoid heavy lifting, bending, and stooping.

After surgery, Ford continued physical therapy. Her therapist noted self-limited attempts, minimal effort, and failure to follow instructions.

Dr. Kenneth Cook, Ford's longtime treating physician, continued to see Ford following her surgery. Dr. Cook concluded in February 1999 that Ford did not need further surgeries. A myelogram and a CT scan revealed only moderate to small disc bulges with no herniation and slight thinning in the L4 and L5 nerve root sleeves. Ford's straight leg raise test yielded positive results at 60 degrees.

Dr. Cook continued to see Ford in 1999, 2000, and 2001 for back discomfort. He prescribed Darvocet for chronic lumbar pain and other medications.

In December 1999, Dr. Cook opined that Ford was totally disabled due to lumbar disc disease. In November 2000 and September 2001, Dr. Cook assessed Ford's functional capacity,

concluding that Ford occasionally could lift or carry five to eight pounds, but could not perform repetitive lifting. He further indicated that Ford could stand or walk for a total of two hours in an eight-hour workday and sit less than two hours in an eight-hour workday.

Dr. Eric Carter conducted a consultative examination of Ford in December 2000. He noted that Ford's sensory system appeared intact and that she had a normal gait. She had some difficulty with heel to toe walking. Lumbar spine flexion and extension was 60 degrees. Lateral flexion was 15 degrees bilaterally. Straight leg raises sitting were 35 degrees bilaterally. Otherwise, Ford had normal ranges of motion. She had some chronic low back pain and radiculopathy. Dr. Carter did not specify any functional limitations.

Two state agency physicians examined Ford in 2001. Both reviewed Ford's medical records and opined that she could perform medium work.

## II. PROCEDURAL HISTORY

On October 31, 2000, Ford filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability since May 1, 1998. Her application was denied both initially and on reconsideration.

The Administrative Law Judge (ALJ) held a hearing on Ford's application on September 19, 2001. In a decision dated September 26, 2001, the ALJ found that Ford retained the functional capacity to: occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; sit one-half to one hour continuously and repetitively for a total of four hours in an eight-hour workday; stand or walk for one hour at a time for a combined total of four hours in an eight-hour workday; occasionally kneel, stoop, crawl, crouch, and climb stairs; never climb ladders; and occasionally operate foot pedal controls. Taking into consideration the testimony of a vocational expert, the ALJ

concluded that Ford retained the functional capacity for a range of light work that included her previous work as a supervisor, truck dispatcher, and customer service representative. The ALJ accordingly determined that Ford is not disabled and denied her application for benefits. The Appeals Council declined to review that determination, allowing the ALJ's decision to become the final decision of the Commissioner.

Ford sought judicial relief in the United States District Court for the Western District of Kentucky pursuant to 42 U.S.C. § 405(g). The Magistrate Judge issued Findings of Fact and Conclusions of Law on August 18, 2003, finding that the ALJ's decision was supported by substantial evidence and recommending that it be affirmed. On September 25, 2003, the district court adopted the Magistrate Judge's Findings of Fact and Conclusions of Law, thus affirming the Commissioner's decision. This appeal ensues.

## III. STANDARD OF REVIEW

The standard of review in this area is limited. Unless the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record, we must affirm the Commissioner's conclusions. 42 U.S.C. 405(g); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). We must affirm a decision supported by substantial evidence even if there is substantial evidence in the record to support an opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV. ANALYSIS

Ford raises three issues on appeal. She argues that: (A) the ALJ failed to attribute proper weight to the testimony of Ford's treating physician; (B) the ALJ erred in his determination of Ford's residual functional capacity; and (C) the treating physician's functional assessment should not have been discounted because he did not set forth the basis for his opinion on the assessment form itself. We address each argument in turn.

A.

Ford first argues that the ALJ failed to give proper weight to the testimony of Dr. Cook, Ford's treating physician, and instead improperly relied on Dr. Carter's observations. Ford's argument is unpersuasive.

Although a treating physician's opinion typically is entitled to substantial deference, the ALJ is not bound by that opinion. *Warner*, 375 F.3d at 390; 20 C.F.R. § 404.1527(d)(2). The treating physician's opinion is entitled to deference only if it is based on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and is not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

In this case, the ALJ has set forth in adequate detail the basis for his refusal to accept Dr. Cook's assessment of Ford's functional capacity. The ALJ took into account Dr. Cook's functional capacity assessments, but noted that Dr. Cook's conclusions were not consistent with his own progress notes and clinical and objective findings in the record. Specifically, the ALJ cited medical evidence showing that, following surgery in 1999, Ford had a functional active range of motion in

the lower extremities. She was able to heel walk and toe walk. She demonstrated 3/5 grade strength bilaterally with no obvious focal muscle weakness. Dr. Cook's progress notes in 2000 show that Ford's straight leg raises were positive at 60 degrees bilaterally, almost a full range of motion. The ALJ further remarked based on the evidence that Dr. Cook was treating Ford conservatively with medication, including Darvocet for discomfort. He cited objective medical evidence showing that Ford suffered no other herniations following her surgery in December 1998. Under these circumstances, the ALJ properly rejected Dr. Cook's conclusions regarding Ford's functional limitations.

In determining that the ALJ properly rejected Dr. Cook's opinions regarding Ford's functional abilities, we find it significant that the ALJ did not reject wholesale the conclusions of Dr. Cook and various physicians and therapists who acknowledged that Ford exhibited chronic lumbar pain and restricted mobility and diminished strength in the lower extremities. The ALJ accommodated Ford's back and leg limitations in his functional capacity assessment, placing restrictions on Ford's ability to lift and carry, sit, stand and walk, kneel, stoop, crawl, crouch, climb, and operate foot controls.

As the ALJ relied upon considerable objective medical evidence in the record indicating that Ford was capable of performing light work with restrictions, the ALJ's residual functional capacity assessment is supported by substantial evidence. Under the controlling standard of review, we must therefore affirm the Commissioner's denial of benefits.

Ford fails to persuade us otherwise arguing that the ALJ's reliance on Dr. Carter's findings was misplaced. Ford concedes that Dr. Carter did not assess any specific functional limitations, but contends that Dr. Carter's findings of severe pain with limited mobility and diminished strength in

the lower extremities support, rather than contradict, a finding of disability.  We must, however, affirm a decision supported by substantial evidence even if there is substantial evidence in the record to support an opposite conclusion.  *Smith*, 99 F.3d at 782.  As the ALJ's disability assessment is supported by substantial evidence, we need not consider whether the evidence also could support a contrary determination.

B.

Ford's second argument on appeal is that, in view of Dr. Carter's failure to assess functional limitations, the ALJ improperly assumed the role of a medical expert in finding that Dr. Carter's consultative examination established the ability to perform light work.  Ford's argument essentially is that the ALJ erred in his determination of Ford's residual functional capacity because the residual functional capacity assessment is the duty of her physicians.

Ford's position is unsupportable.  The residual functional capacity determination is expressly reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546.  Such a determination is part of the disability evaluation.  20 C.F.R. § 404.1546.  The ALJ properly assessed Ford's residual functional capacity, and, as we already have explained, substantial evidence supports that assessment.

C.

Ford's third argument on appeal is that her treating physician's functional assessment should not have been discounted because he did not set forth the basis for his opinion on the assessment form itself.  The record reflects that the ALJ rejected Dr. Cook's functional capacity assessment not for this reason, but rather because it was not supported by objective medical evidence in the record.  Accordingly, we need not further address the issue.

## V.  CONCLUSION

For all of the foregoing reasons, we affirm the district court's decision.