NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0582n.06

No. 08-4210

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 18, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **PAMELA J. PRICE,** | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | |
| **v.** | ) | **On Appeal from the United** |
| | ) | **States District Court for the** |
| **COMMISSIONER SOCIAL SECURITY** | ) | **Southern District of Ohio** |
| **ADMINISTRATION,** | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | |

**Before: CLAY and SUTTON, Circuit Judges; and Thapar, District Judge.**[*]

**CLAY, Circuit Judge.** Plaintiff, Pamela J. Price ("Price"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's determination that she was not entitled to a period of disability, disability insurance benefits, or supplemental security income under the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i), 423, 1382c. After due consideration of Price's arguments on appeal, we **AFFIRM** the district court's judgment affirming the administrative law judge's ("ALJ") decision to deny Price's application for benefits.

**I.**

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In 2003, Price filed applications for disability insurance benefits and supplemental security income alleging that she "became unable to work because of [a] disabling condition on January 23, 2001," identifying migraines, neck and back pain, dizziness, and "mental health" issues as the basis for her claim. (Administrative Record ("A.R.") 87-91, 99, 133.) After her application was denied, Price requested a hearing before an ALJ. At the March 8, 2006 hearing, Price appeared with counsel and testified on her own behalf. A vocational expert also testified. After considering testimony and other evidence, the ALJ issued a decision on February 20, 2007, finding that Price was not disabled. (A.R. 15-32.) After Price's request for review was denied, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On October 2, 2007, Price filed a complaint in the United States District Court for the Southern District of Ohio seeking judicial review of the ALJ's decision. After considering the parties' briefs and upon review of the administrative record, the magistrate judge recommended that the Commissioner's decision be affirmed. On September 2, 2008, over Price's objections, the district court adopted the magistrate judge's Report and Recommendation in its entirety. Price then timely appealed to this Court.

**II.**

As an initial matter, we reject Price's contention that the magistrate judge and the district court applied an incorrect standard of review in reviewing the ALJ's decision.

**A.**

To be entitled to disability insurance benefits, an individual must be "under a disability" within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(E). The Act defines

"disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a).

Judicial review of the ALJ's decision is authorized by section 205(g) of the Act. 42 U.S.C. § 405(g). Section 205(g) provides that the Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review thus is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is "substantial evidence" in the record to support the findings. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987) (internal quotations and citations omitted). In applying this standard, this Court does not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). It also "is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

On appeal, this Court does not defer to the judgment of the district court. Rather, the Court reviews *de novo* whether substantial evidence supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).

**B.**

According to Price, the district court considered only the ALJ's ultimate *decision* that she was not disabled but failed to review the *findings* supporting the decision. Price's argument is unpersuasive.

Price's claim rests on the fact that both the magistrate judge and the district court stated that the court's "sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision." (Record on Appeal ("ROA") 4, 40-41.) The conclusion that Price draws from this de-contextualized statement, however, ignores that both the magistrate judge and district court also recognized that "[t]he Commissioner's *findings* must be affirmed if they are supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (ROA 4, 41 (emphasis added).) The record also demonstrates that the magistrate judge and district court in fact considered whether the ALJ's findings were supported by substantial evidence, and did so at length. (*See* ROA 7-20, 42.) Nothing in the record reflects that the magistrate judge or district court employed an improper standard of review or failed to conduct the requisite review.

In any event, we agree with the Commissioner's argument that, even if Price were correct, she cannot demonstrate prejudice because this Court reviews the ALJ's findings directly. *See Valley*, 427 F.3d at 390. Consequently, regardless of whether the district court employed an improper standard of review, this Court's review would cure any potential error.

## III.

Before turning to whether substantial evidence supports the ALJ's denial of Price's disability application, we consider Price's argument that the ALJ abused its discretion by discounting the opinion of her treating psychiatrist, Dr. Ashbaugh. Although conceding that Dr. Ashbaugh's opinion is not entitled to "controlling weight" because "other opinions of record are 'inconsistent' with it," Price argues that Dr. Ashbaugh's opinion nevertheless is entitled to "the most weight." Price's argument is unpersuasive. Upon review of the record, we conclude that the ALJ reasonably weighed Dr. Ashbaugh's opinions in light of the factors set forth in the regulations, considering the extent to which his interrogatory responses were supported by relevant medical evidence and consistent with other evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## A.

Under the applicable regulations, the Commissioner generally gives "more weight to opinions from [] treating sources," and will give such an opinion "controlling weight" where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Accordingly, while a treating physician's opinion generally is afforded "substantial, if not controlling, deference," *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004), that is true only if it satisfies the

standards set forth in the regulations, *Rogers*, 486 F.3d at 242; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion. *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc); *Warner*, 375 F.3d at 391-92; *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372-73 (6th Cir. 2006); *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004).

**B.**

In August 2004, Dr. Ashbaugh provided written responses to interrogatories and completed a questionnaire, both propounded by counsel, regarding the extent of Price's work-related limitations. Although Dr. Ashbaugh's responses to the questionnaire were equivocal, his interrogaory responses indicated that Price had numerous mental functional limitations and was disabled. Because Dr. Ashbaugh treated Price from January 2004 through January 2006, his opinion regarding the extent of Price's impairments generally would be entitled to great weight. In reviewing Price's claim, however, the ALJ concluded that Dr. Ashbaugh's opinion was not entitled to significant weight because it was not supported by objective medical findings and also was inconsistent with other evidence in the record. Upon review of the record, we conclude that substantial evidence supports this conclusion.

First, the record amply supports the ALJ's determination that Dr. Ashbaugh's opinion was not supported by objective medical evidence. In responding to the interrogatories regarding Price's impairments, Dr. Ashbaugh indicated that Price was unable to perform numerous tasks and thus was

severely impaired. Dr. Ashbaugh, however, failed to provide any explanation for his responses, repeatedly declining the invitation to "please explain" the basis of his opinions. (A.R. 381-86.) Although Dr. Ashbaugh elsewhere referred to "testing" that supported his conclusions, his response was vague and unhelpful. *See Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 986 (6th Cir. 2009); *Franklin v. Sec'y of Health & Human Servs.*, No. 88-1494, 1989 U.S. App. LEXIS 7974, at *6 (6th Cir. June 6, 1989). Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion. *See* 20 C.F.R. § 404.1527(d)(3); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." (internal quotation omitted)); *Hash*, 309 F. App'x at 986-87; *Franklin*, 1989 U.S. App. LEXIS 7974, at *6.

Second, the record also supports the ALJ's conclusion that Dr. Ashbaugh's opinion was inconsistent with his own prior assessments and treatment notes. Although Dr. Ashbaugh's treatment notes repeatedly indicate that Price was anxious and had a disaffected mood, they do not document any factors that would support the conclusion that Price's condition was debilitating. Rather, as the ALJ pointed out, Dr. Ashbaugh's treatment notes from March 7, 2005 indicate that Price herself believed that "she is doing fairly well." (A.R. 30, 414.) Dr. Ashbaugh's treatment notes from May 23, 2005 similarly indicate that Price stated that she didn't think she was "doing too bad." (A.R. 483.) In fact, all of Dr. Ashbaugh's treatment notes reflect that, while Price was anxious or depressed about situational family issues, she consistently was alert, oriented, and calm during conversations with Dr. Ashbaugh. Moreover, over the course of 2004 and 2005, Dr. Ashbaugh

consistently estimated Price's global assessment of functioning ("GAF") score to be in the mid-50s, indicating only "moderate" symptoms.[1]  (A.R. at 414-16.)  On this record, we find no error in the ALJ's conclusion that Dr. Ashbaugh's assessment that Price's impairments were debilitating was inconsistent with his treatment notes and prior assessments.  *See Hash*, 309 F. App'x at 987; *Ford*, 114 F. App'x at 197.

Third, the record also supports the ALJ's determination that Dr. Ashbaugh's interrogatory responses were inconsistent with the mental functional capacity assessment Dr. Ashbaugh completed the same day that he responded to the interrogatories.  That questionnaire asked Dr. Ashbaugh to assess Price's "ability to do work-related activities on a day-to-day basis in a regular work setting." (A.R. at 375.)  In completing the questionnaire, Dr. Ashbaugh indicated that Price's ability to make occupational adjustments, make performance adjustments, and make personal-social adjustments almost uniformly was "fair" to "good."  (A.R. at 375-77.)  The only factor that Dr. Ashbaugh rated "poor" was Price's ability to "demonstrate reliability."  (A.R. at 377.)  In describing Price's "limitations" with respect that this factor, however, Dr. Ashbaugh indicated only that Price had poor concentration, trouble focusing, and poor frustration tolerance.  (A.R. at 376.)  In support of these negative assessments, Dr. Ashbaugh failed to follow the directive to "include the medical/clinical

---

[1]"The GAF scale reflects a clinician's assessment of an individual's overall level of functioning."  *Hash*, 309 F. App'x at 988 n.1 (citing American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)).  A GAF score of 51-60 "indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.* few friends, conflict with peers or co-workers)."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (internal quotation marks omitted).  The higher the GAF score, the less serious the symptoms or difficulties in functioning.

findings that support this assessment." (A.R. at 376.) Dr. Ashbaugh also failed to identify any "other work-related activities which are affected by" Price's purported impairments. (A.R. at 377.) We find no error in the ALJ's conclusion that these responses were inconsistent with the notion that Price was significantly impaired.

Fourth, the ALJ reasonably determined that Dr. Ashbaugh's opinions were inconsistent with the medical conclusions of other reviewing physicians. Although the opinion of a treating physician generally is given more weight, this Court has recognized that consultative opinions may be credited where they are supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 (6th Cir. 1987). As the ALJ's review of the administrative record indicates, no other treating or consultative physicians concluded that Price was disabled.

Taken together, these considerations provide more than sufficient evidence to support the ALJ's conclusion that Dr. Ashbaugh's interrogatory responses were entitled only to minimal weight. We therefore reject Price's request that we set aside that finding aside. Because Price's argument boils down to what weight should be given opposing medical opinions, and because the record supports the ALJ's findings with respect to Dr. Ashbaugh's opinions, we find no error in the ALJ's decision to discount Dr. Ashbaugh's opinion. *See Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings. Further, there is ample support in the record in addition to [the disputed] medical opinion to uphold the ALJ's findings with respect to the severity of [the claimant's] condition.").

**IV.**

Finally, we turn to Price's claim that the ALJ's findings are not supported by substantial evidence. Taking each of Price's concerns in turn, we conclude that Price's argument are contradicted by the record and unavailing. The ALJ properly applied the five-step sequential evaluation process in determining that Price was not disabled. The ALJ considered the record medical evidence and opinion of the vocational expert and concluded that, despite her impairments, Price could perform medium exertional work and thus could perform a significant number of jobs in the national economy. The record supports those conclusions.

**A.**

To be considered "under a disability" under the Social Security Act, a person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further specifies:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To determine eligibility for disability benefits, the SSA uses a five-step "sequential evaluation process." 20 C.F.R. § 404.1520; *Combs*, 459 F.3d at 642-43. If the claimant is found to

be conclusively disabled or not disabled at any step, the inquiry ends at that step.  20 C.F.R. §

404.1520(a)(4).  The five steps are:

> 1)  If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2)  If the claimant does not have a severe medically determinable physical or mental impairment—*i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3)  If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4)  If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5)  If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*See id.* §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539

(6th Cir. 2007); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The claimant

bears the burden of proof through step four; at step five, the burden shifts to the Commissioner.

*Jones*, 336 F.3d at 474.

**B.**

Price's first complaint is that the ALJ improperly characterized the medical evidence as

concluding that she had "vascular" headaches, when in fact her medical records show that her

doctors agreed that she suffered from "posttraumatic" headaches.  Price contends that the "ALJ's

purposeful misdiagnosis" is "part of an odd theme that appears throughout the ALJ opinion seeking

to deny the *posttraumatic* origin of [her] chronic headaches and the fact [that they are the result of a] work-related injury." (Price Br. at 20.) We disagree.

Contrary to Price's argument on appeal, the record actually shows that the ALJ acknowledged that (1) Price's "history of headache pain is well-documented by the medical evidence of record," (2) that she was "diagnosed [with] post-concussion syndrome with associated headache pain," (3) she was "diagnosed with 'transformed migraine' type headaches," and (4) she was diagnosed with "post-concussion syndrome." (A.R. at 23-24.) The ALJ, however, also took into account that Price's doctors stated that Price's headaches "appear to be vascular in nature." (A.R. 23, 345.) Considering the various characterizations of her headaches, the ALJ concluded that the vascular diagnosis was more consistent "with the small-vessel ischemic changes that have repeatedly been shown on the CT and MRI testing of record and is a more reasonable interpretation of the evidence." (A.R. 24.) In support of this conclusion, the ALJ noted that the testing done at the time of Price's "minor 2001 closed-head injury" was negative. (A.R. 24.) The record supports the ALJ's reasoning, showing both that the testing around the time of Price's 2001 injury was negative and that subsequent testing confirmed ischemic damage that would support a vascular diagnosis. (A.R. 157, 495.)

In any event, even if Price is correct that the ALJ should have recognized the posttraumatic origin of her headaches, there is no evidence that this distinction played any significance in the ALJ's decision that Price was not disabled. Although characterizing Price's headaches as vascular, the ALJ nevertheless recognized that they were "severe" and resulted in significant functional limitations. (A.R. at 23-26 (finding that Price's vascular headaches "do affect her capacity for basic work activity

to some extent and which are 'severe' within the meaning of the Social Security Act".)) The aspersions Price's brief casts on the ALJ's motives and findings are wholly unfounded.

Considering the record as a whole, we conclude that there is substantial evidence to support the ALJ's conclusion that although Price suffered from severe headaches, of whatever origin, those headaches did not render Price disabled, insofar as that term is defined in the Act. The origin and effect of her headaches clearly were distinct considerations, and Price offers no evidence that the ALJ's consideration of the former influenced its consideration of the latter. Price also has offered no evidence that any medical evidence supports a finding that her headaches were objectively debilitating. Nor would the record support such a conclusion. Although the record shows that Price made numerous visits to various emergency rooms, those visits mostly involved complaints that were unrelated to her allegedly debilitating headaches. (A.R. at 147-49, 154-55, 170-73, 180-83, 194-96.) In fact, on several visits, Price expressly denied suffering from headaches. (A.R. at 180, 194.) Price's own descriptions of her daily regimen and social activities also support the ALJ's conclusion that she was not disabled. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").

## C.

Price also argues that the ALJ also improperly denied her claim on the basis of her "history of polysubstance abuse." Although conceding that she has a history of substance abuse, Price disputes whether this history "has any present effect on [her] condition as it pertains to her ability to work," suggesting the ALJ's finding is but another example of the ALJ's scheme of "purposeful

misdiagnosis." (Price Br. at 21-22.) Once again, however, Price overlooks that the record does not indicate that the ALJ relied on this finding to minimize or dispute her claimed impairments.

Price emphatically challenges the ALJ's characterization of her history of substance abuse as a "severe" impairment, arguing that no medical evidence supports this conclusion and contending that no doctors have described any "drug-seeking behavior" on her part. Again, however, Price seems to fundamentally misunderstand the ALJ's finding. The ALJ was not characterizing her history of substance abuse as "severe" and does not appear to have relied on her history of abuse as a basis for minimizing her claimed disabilities. Rather, the ALJ's decision, although not a model of clarity, seems to suggest that her substance abuse was one factor that contributed to the severity of *her impairment*. The ALJ then took this limitation into account in determining what jobs Price remained able to perform. Although the ALJ could have been clearer on this point, we find nothing in the record to support Price's claim that the ALJ erred in any way.

## CONCLUSION

For the foregoing reasons, we hereby **AFFIRM** the district court's decision upholding the Commissioner's denial of Price's application for disability insurance benefits.