NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 17-4143

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WILLIAM E. HEDGES,

  Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

FILED
May 31, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

BEFORE:  GIBBONS, THAPAR, and LARSEN, Circuit Judges.

PER CURIAM.  William Hedges appeals the district court's judgment affirming the denial of his application for disability-insurance benefits.  Hedges claims that the Administrative Law Judge (ALJ) erred when he determined that Hedges' alleged depressive disorder and generalized anxiety disorder did not render him disabled.

Hedges first argues that the ALJ erred in conducting the five-step disability analysis. According to Hedges, the ALJ incorrectly found that his alleged mental-health impairments were "non-severe" at step two of that analysis, and as a result, never analyzed whether those impairments limited his residual functional capacity at step four.  The record, however, shows otherwise.

Though the ALJ concluded that Hedges did not have any severe mental-health impairments, the ALJ did find that Hedges suffered from four severe physical impairments.  And once an ALJ finds that a claimant has at least one severe impairment at step two of the disability

analysis, the ALJ must then "consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe" in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e) (emphasis added). That is what the ALJ did here. So whether the ALJ characterized Hedges' mental-health impairments as severe or non-severe at step two is "legally irrelevant" and does not amount to error. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Hedges next argues that the ALJ did not give sufficient deference to his treating psychologist, who opined that Hedges was permanently disabled. Under the "treating-source rule," the ALJ is required to give "controlling weight" to a treating clinician's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If, however, the treating physician's opinion "is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec. Admin.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc)).

The ALJ did not violate the treating-source rule in Hedges' case. While the ALJ's decision afforded Hedges' treating psychologist's opinion "little weight," it did so because her opinion was neither supported by objective evidence nor consistent with the other evidence in the record. As the ALJ noted, the treating psychologist based her opinion mainly on Hedges' subjective reports of his symptoms and limitations—which were inconsistent with his reports to other clinicians. For instance, Hedges told his treating psychologist that he spent most of his time in his recliner or bathtub and rarely got out of the house. But he told other clinicians and the ALJ that his daily activities included yardwork, running errands, and attending his son's football games, both home

and away. Hedges also told his treating psychologist that he had difficulty concentrating but reported to other psychologists that he was able to concentrate enough to drive for twenty minutes and watch a thirty-minute television show. And finally, while Hedges reported to his treating psychologist that his computational skills had worsened and he struggled with a serial subtraction task, at other times he was able to perform the same task "accurate[ly] and at a fair speed." R. 8-9, Pg. ID 1010.

Moreover, at least two examiners other than Hedges' treating psychologist opined that Hedges was malingering. To wit, the psychologist who performed the most extensive objective testing on Hedges suggested that he was "attempting to simulate mental illness," and that "*all* psychometric test results [were] positive for some form of symptom magnification/malingering/accentuation." R. 8-9, Pg. ID 1001 (emphasis added). That psychologist went on to note that Hedges' test results were consistent with "accentuation of both psychological and somatic complaints . . . for purposes of potential secondary and/or financial gain." R. 8-9, Pg. ID 998. A different psychologist noted that Hedges' behavioral presentation was "mildly dramatic," with moderate "[e]mbellishment." R. 8-7, Pg. ID 667. And yet another noted that Hedges' complaints were "probably exaggerated." R. 8-7, Pg. ID 687. The ALJ did not err in discounting the treating psychologist's opinion in light of these conflicting opinions and Hedges' own inconsistent statements about his symptoms and limitations. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (holding that ALJ did not violate treating-source rule where medical record and other medical sources indicated that claimant had "significantly more . . . ability than [the treating source] ha[d] opined"). So his treating-source argument fails.

Accordingly, we **AFFIRM** the district court's judgment.