NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0410n.06

Case No. 22-1047

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 17, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TANYA RAE MAKELA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | **O P I N I O N** |
| | ) | |

Before: McKEAGUE, WHITE, and MURPHY, Circuit Judges.

McKEAGUE, Circuit Judge. Tanya Makela appeals the district court's decision affirming the Social Security Administration's denial of her application for supplemental security income and disability insurance benefits. On appeal, Makela contends that the administrative law judge ("ALJ") failed to assess the consistency and supportability of a treating-source opinion. Because the ALJ's determinations were supported by substantial evidence, and because the ALJ provided sufficient reasons for giving little weight to the treating-source opinion in question, we affirm.

**I**

**A. Background**

Plaintiff-Appellant Tanya Makela was born on August 8, 1966. At the time of her disability proceedings before the ALJ, Makela was fifty-two years of age. She had earned a high school equivalent education and had formerly worked as a cook at a coffee house and a medical center, a

day laborer with a temporary staffing agency, a laundry aide at a nursing home, and a shelter monitor at a domestic violence shelter. Makela suffers from a combination of severe physical and mental impairments, including degenerative disc disease of the cervical spine, osteoporosis, right knee fracture, degenerative joint disease of the bilateral shoulders, chronic pain syndrome, and asthma. These impairments, she alleges, "have made it impossible for her to work since at least April 1, 2016." Letter to Appeals Council, R. 10-2, PageID 48.

## B. Procedural History

Makela filed applications for supplemental security income and disability insurance benefits on March 25, 2016 and March 13, 2017, respectively. She alleged a disability onset date of April 1, 2016. When the Social Security Administration ("SSA") denied her claims, Makela timely requested an administrative hearing before an ALJ. The ALJ conducted the requested hearing on November 21, 2018. Approximately three months later, on February 13, 2019, the ALJ issued a written decision denying Makela's application. The ALJ determined that, despite Makela's severe impairments, she could still perform a significant number of jobs available in the national economy and was therefore "not disabled" under the Social Security Act.

Makela filed a request for review by the Appeals Council, which the Appeals Council denied, rendering the ALJ's opinion the final decision of the Commissioner of Social Security ("Commissioner"). Makela then filed a complaint in the United States District Court for the Western District of Michigan, seeking judicial review of the ALJ's decision. Following briefing and oral argument by the parties, Magistrate Judge Maarten Vermaat affirmed the ALJ's decision on October 29, 2021. This appeal followed.

## C. The ALJ's Decision

Administrative law judges are tasked with determining whether claimants are disabled under the Social Security Act. Disability is defined "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether Makela is disabled under the Social Security Act, the ALJ comprehensively assessed the medical evidence and employed the five-step sequential analysis required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). This court has summarized this five-part test as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The claimant bears the burden at steps one through four, but the burden shifts to the Commissioner at step five to prove that the claimant can perform other work available in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2).

The ALJ determined that Makela met the insured status requirements of the Social Security Act through June 30, 2018. At step one, the ALJ found that Makela had not engaged in substantial

gainful activity since April 1, 2016, Makela's alleged onset date. At step two, the ALJ found that

Makela had the following severe impairments:

> [D]egenerative disc disease of the cervical spine (DDD), osteoporosis, history of right knee fracture, degenerative joint disease (DJD) of the bilateral shoulders, chronic pain syndrome, asthma, major depressive disorder (MDD), attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), borderline personality disorder (BPD), and a history of substance use disorder.

ALJ Decision at 3. The ALJ determined that these impairments significantly limited Makela's

ability "to perform basic work activities." *Id.* at 4. The ALJ also considered several additional

impairments, including gastroesophageal reflux disorder (GERD), dysphagia, gastritis, small

hiatal hernia, and left elbow epicondylitis, but determined that these impairments were "non-

severe" and did not "result in any significant work related limitations." *Id.* At step three, the ALJ

determined that Makela did not have an impairment that meets or medically equals any of the

impairments enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before reaching steps four and five, the ALJ evaluated Makela's "residual functional

capacity" ("RFC"), i.e., her ability to work in light of her impairments. *See Combs v. Comm'r of

Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). To conduct this evaluation, the ALJ considered

numerous proffered medical opinions. She gave partial weight to the opinions of George Starrett,

Ed.D. and Edward Brophy, D.O., state agency consultants. She gave no weight to the medical

diagnoses offered by Ron Balcerzak, Makela's friend and lay witness. And she gave little weight

to the medical source statement of Makela's treating physician, Michael E. Zevitz, M.D.

Based on Makela's impairments and symptoms, both severe and non-severe, the ALJ

concluded that Makela could "perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and

416.967(b)." ALJ Decision at 8. The RFC provided for a number of limitations. Specifically, the

ALJ found that Makela could not climb ladders, ropes, or scaffolds, and that she should avoid

working at unprotected heights or around dangerous machinery. Makela could, however, occasionally climb stairs, kneel, crouch, or crawl, as well as reach overhead. She was also able to understand, remember, and carry out simple instructions and would be able to work in a low-stress job with only minimal interaction with others. Lastly, the ALJ found that Makela was able to rotate her neck and handle with her bilateral upper extremities, and that she could therefore perform work that did not impose fast-paced production quotas.

The ALJ then proceeded to steps four and five. There, the ALJ determined that Makela was unable to perform her past relevant work. However, in considering Makela's age, education, work experience, and residual functional capacity, as well as testimony provided by a vocational expert, the ALJ found that there existed a significant number of jobs in the national economy that Makela could perform. The vocational expert determined that Makela would be able to perform the occupational requirements of jobs similar to a merchandise marker, routing clerk, and mail clerk, and the ALJ found these conclusions to be consistent with the record. Because Makela could perform other work that exists in significant numbers in the national economy, the ALJ determined that Makela was not under a disability, as defined in the Social Security Act, from April 1, 2016 through the date of that decision, February 13, 2019.

**II**

We review a district court's decision regarding social security benefits de novo, *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014), and we review the Commissioner's denial of disability benefits under the substantial evidence standard, *Shelman v. Heckler*, 821 F.2d 316, 319 (6th Cir. 1987); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). When reviewing the Commissioner's disability conclusion, we are "limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc.*

*Sec*, 486 F.3d 234, 241 (6th Cir. 2007). "'[S]ubstantial evidence' is a 'term of art.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 301 (2015)). The standard requires "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241 (citation omitted).

Under this deferential standard, we do not "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509. In fact, "it is not necessary that this court agree with the Commissioner's finding." *Rogers*, 486 F.3d at 241. So long as substantial evidence supports the Commissioner's decision, this court will not reverse "even if there is substantial evidence in the record that would have supported the opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

**III**

**A. Applicable Regulations**

We turn first to Makela's argument that the administrative law judge improperly applied 20 C.F.R. §§ 404.1527 and 416.927 to the assessment of medical opinion evidence in her case. Makela contends, without any factual basis, that her applications for supplemental security income and disability benefits were filed after March 27, 2017. Relying on this inaccurate factual assertion, Makela argues that 20 C.F.R. § 1520c, effective March 27, 2017, should apply to her claims. This argument lacks merit.

In January of 2017, the SSA revised its regulations pertaining to the consideration and articulation of medical opinions. *See* 20 C.F.R. § 404.1520c. Those revisions went into effect on March 27, 2017. *Id.* As the text of § 404.1520c makes clear, "[f]or claims filed before March 27,

2017, the rules in § 404.1527 apply." *Id.* Internal guidelines governing SSA operations are also instructive. *See* SSA's Program Operations Manual System, DI 24503.050, https://secure.ssa.gov/poms.nsf/lnx/0424503050 (last visited Sept. 30, 2022). Those guidelines provide that, for "[c]oncurrently-filed claims or when one claim is open when another new claim is filed," administrators must "use the earliest possible filing date of the claims to determine which set of rules to follow." *Id.* Pursuant to those guidelines, "[i]f the earliest filing date of the claims is . . . [b]efore March 27, 2017, use the prior rules." *Id.*

Makela filed her first application for benefits on March 25, 2016. She concedes this fact in her opening brief. As a result, the earliest possible filing date of Makela's claims is *before* March 27, 2017, and the prior regulations apply. Makela's reliance on district court cases that examine heightened articulation requirements under the new regulations is therefore misplaced. The ALJ properly applied 20 C.F.R. §§ 404.1527 and 416.927 to the evaluation of medical opinion evidence.

**B. Consistency and Supportability**

Having established the applicable regulations, we turn now to the merits of Makela's chief argument on appeal: that the ALJ improperly disregarded the opinion of Dr. Michael E. Zevitz, Makela's treating physician. Specifically, Makela alleges that the ALJ failed to properly assess the consistency and supportability of Dr. Zevitz's medical opinion with respect to the medical record. In passing, she also contends that the ALJ failed to provide "good reasons" for discounting Dr. Zevitz's medical opinion and failed to adequately consider the regulatory factors when weighing the opinion's probative value. Makela argues that the ALJ erred in these respects regardless of the applicable regulations. However, for the reasons articulated above, we must assess the decision's conformance with 20 C.F.R. §§ 404.1527 and 416.927, not § 404.1520c. Reviewing the ALJ's

opinion and the entirety of the record pursuant to these regulations, we find no error in the ALJ's decision to afford Dr. Zevitz's opinion little weight.

### 1. *Procedural Requirements*

When making disability determinations, an ALJ must follow certain procedures. *Blakley*, 581 F.3d at 406–07. One such procedure is commonly known as the "treating physician" rule. A treating physician is "a medical source who regularly treats the claimant." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Here, Dr. Zevitz began regularly treating Makela in January 2018.

Under the treating physician rule in effect at the time Makela filed her claims, treating-source opinions are typically given "substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). However, an ALJ need not afford a treating-source opinion controlling weight if the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations in original). Where, as here, the ALJ determines that a treating-source opinion is entitled to less-than-controlling weight, she must weigh the medical opinion pursuant to the factors listed in 20 C.F.R. § 404.1527(c). *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017). Those factors include, among others, the "[l]ength of the treatment relationship and the frequency of the examination," the "[n]ature and extent of the treatment relationship," and the medical opinion's "supportability" and "consistency." 20 C.F.R. § 404.1527(c)(2)(i), (c)(2)(ii), (c)(3)–(4).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)).

Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (citation omitted).

### 2. *The ALJ's Evaluation of the Medical Evidence*

Like the district court, we find no error in the ALJ's evaluation of Dr. Zevitz's opinion. First, the ALJ found that Dr. Zevitz's "checklist-style form includes conclusions regarding functional limitations without any rationale for many of them." ALJ Decision at 12. Substantial evidence supports that determination, as the majority of Dr. Zevitz's medical source statement includes simple "Yes/No" checkbox answers with little to no reference to medical evidence. When asked to elaborate on the nature, location, frequency, and severity of Makela's pain, Dr. Zevitz simply wrote "See Progress Notes." Medical Source Statement, R. 10-2, PageID 582. When asked to identify relevant clinical findings and objective signs, Dr. Zevitz again wrote only "See Progress Notes." *Id.* And when asked to describe his treatment and response, Dr. Zevitz left the answer blank. *Id.* We have held that an ALJ need not afford controlling weight to similarly "vague and unhelpful" treating-source opinions in which the physician "fail[s] to identify objective medical findings to support" his conclusions. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009).

Second, the record also supports the ALJ's conclusion that Dr. Zevitz's opinion was "inconsistent with the evidence of record." ALJ Decision at 12. She cited numerous examples within the medical record to support her conclusion:

> Dr. Zevitz opined that the claimant can sit for less than 2 hours in an 8-hour workday and can stand and/or walk for less than 2 hours in an 8-hour workday. He stated the claimant is entirely unable to twist, stoop, or crouch. *This is inconsistent* with generally mild findings on exam that would support limited standing or walking, bending, or twisting . . . Dr. Zevitz opined that the claimant can never lift 10 pounds and she can rarely lift less than 10 pounds. *This is inconsistent* with the

> evidence of record, which revealed mild degenerative changes at the AC joint, full range of motion with some tenderness, and no motor deficits. . . . Dr. Zevitz also opined that the claimant is incapable of even "low stress" work and would be absent from work four or more days per month. *This is inconsistent* with the evidence of record which shows that the claimant's insight and judgment are fairly intact. . . . Other exams confirm normal mentation, memory, mood, and affect.

*Id.* at 12–13 (emphasis added) (citations omitted). Because Dr. Zevitz's opinion is inconsistent with substantial evidence in the record, "the ALJ did not err in refusing to defer to [that] opinion." *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008).

Third, the record also supports the ALJ's determination that Dr. Zevitz's opinion was "internally inconsistent." ALJ Decision at 12. For example, despite Dr. Zevitz's restrictive limitations, his own notes "show the claimant was in no acute distress, her neck was supple and nontender, lungs were normal, extremities were normal, there were no motor or sensory deficits." *Id.* at 13 (citations omitted). Similarly, Dr. Zevitz's own observations "indicated the claimant is in no distress, with normal mood, affect and memory." *Id.* The record thus supports the ALJ's conclusion that the restrictive limitations proposed by Dr. Zevitz were contradicted by many of his own examination findings.

The ALJ also found that Dr. Zevitz's proposed limitations were inconsistent with the record. ALJ Decision at 13 (citations omitted). For example, Dr. Zevitz's restrictive standing, walking, bending, twisting, and lifting limitations were largely unsupported by medical evidence, which revealed only "mild degenerative changes at the AC joint, full range of motion with some tenderness, and no motor deficits." *Id.* The ALJ also noted that there was "little if any support for such minimal sitting tolerance." *Id.* Likewise, "Dr. Zevitz offered limitations on handling, fingering, and reaching that . . . find little if any objective support and are more restrictive than even the claimant's own activities suggest." *Id.* For instance, evidence in the record demonstrates Makela's ability to drive multiple times per week and to access her second-floor apartment without

an elevator. This evidence contradicts the limitations Dr. Zevitz proposed and offers substantial support for the ALJ's decision to afford Dr. Zevitz's opinion little weight.

Notably, this is not a case in which the ALJ has "summarily discount[ed] a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552. Here, the ALJ offered detailed explanation of the inconsistencies between Dr. Zevitz's opinion and the other medical opinions, as well as with the record as a whole. Moreover, the ALJ comprehensively detailed the medical record and neither misstated nor mischaracterized its contents. Based on the medical evidence summarized by the ALJ, "reasonable minds would accept the ALJ's conclusion" that Makela remains able to perform light work with limitation, despite Dr. Zevitz's opinion to the contrary. *See Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 961 (6th Cir. 2020).

Finally, the ALJ considered several appropriate factors in evaluating Dr. Zevitz's opinion. She properly acknowledged that Dr. Zevitz is Makela's "treating physician," and she detailed Makela's treatment history, including visits with Dr. Zevitz beginning in January 2018. Additionally, as outlined in this opinion, the ALJ thoroughly addressed consistency and supportability—the two regulatory factors Makela challenges here. It is not necessary for the ALJ to "perform an exhaustive, step-by-step analysis of each factor." *Biestek*, 880 F.3d at 785. Instead, the ALJ need only "provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion.'" *Id.* (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011)). Lack of sufficient rationale, internal inconsistency, inconsistency with the evidence of record, and lack of support for many of the proffered limitations are all "good reasons" backed by substantial evidence. Accordingly, we

conclude that the ALJ gave adequate deference to Dr. Zevitz's opinion by determining that Makela had impairments that precluded her past work and significantly limited the types of other jobs she could perform.

**IV**

For the foregoing reasons, we AFFIRM.